UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARCO FERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-01006-JPH-TAB |
| | ) | |
| JACK HENDRIX, | ) | |
| HALL, | ) | |
| BONER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Marco Fernandez was stabbed by rival gang members at Miami Correctional Facility in 2019. He brought this action, alleging that three Indiana Department of Correction officials— Steve Hall, Eddie Boner, and Jack Hendrix— violated his Eighth Amendment rights when they were deliberately indifferent to his warnings that he would be attacked by rival gang members if transferred to Miami. Defendants have moved for summary judgment. Dkt. [39]. For the reasons below that motion is **granted** in part and **denied** in part.

**I.
Factual Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In his childhood, Mr. Fernandez became affiliated with a gang known as the 14s. Dkt. 40-1 at 17:17–19. He has visible tattoos signaling that affiliation. *Id.* at 18:21–19:4. The 14s have a rivalry with a gang known as the 13s. *Id.* at 15:19–16:5. According to Mr. Fernandez, 13s take a "kill on sight" approach to 14s. *Id.* at 16:6–10.

Mr. Fernandez was transferred from Westville Correctional Facility to Correctional Industrial Facility (CIF) in August 2019. *Id.* at 14:5–22. About a week after Mr. Fernandez arrived at CIF, Internal Affairs (IA) Officers Steve Hall and Eddie Boner[1] interviewed him about his gang affiliation and safety at CIF. *Id.* at 19:13–21:9. Mr. Fernandez told them that he would be at risk of violence from 13s at CIF unless he was with a friend who led the Latin Kings at CIF. *Id.* at 23:4–9.

Officers Hall and Boner reconvened with Mr. Fernandez two weeks later. *Id.* at 24:2–11. They had spoken with a leader of the 13s, who said that Mr. Fernandez would be stabbed if he remained in the general population at CIF. *Id.* at 24:18–25:11. Officers Hall and Boner also said that IDOC's Classification Division told them to find out where Mr. Fernandez could be safe. *Id.* at 25:5–11, 33:22–34:1. One officer recorded the conversation on a cell phone for the Classification Division's use. *Id.* at 24:12–17.

Mr. Fernandez told the officers three times that he could not be transferred to Miami Correctional Facility (MCF) because he "would be killed there." *Id.* at

---

[1] The **clerk is directed** to correct the spelling of Officer Boner's name on the docket. *See* dkt. 14 (waiver of service identifying Eddie *Boner*).

2

25:17–21. At MCF, there were about twice as many 13s as at CIF, including some from Mr. Fernandez's hometown who knew him as a 14. *Id.* at 25:12–26:13. The officers said they would relay that information and the recording of their interview to the Classification Division. *Id.* at 25:22–24, 34:6–12.

About a week later, officers transported Mr. Fernandez to MCF. *Id.* at 26:14–21. Mr. Fernandez told a caseworker at CIF and a caseworker at MCF that he would be in danger at MCF. *Id.* at 26:22–28:2. The caseworker at MCF "tried to call IA and sent messages," but no one answered. *Id.* at 28:11–19. The caseworker offered to put Mr. Fernandez in protective custody, and after 30 to 40 minutes of waiting for IA to respond, he accepted. *Id.* at 28:24–29:4.

About 90 minutes later, before Mr. Fernandez was moved to protective custody, two 13s attacked him—one of them stabbing Mr. Fernandez five or six times. Dkt. 40-1 at 29:8–30:3, 46:9–16.

Mr. Fernandez brought this action in April 2021 against Officers Hall and Boner and IDOC Executive Director of Classification Jack Hendrix. Dkt. 1. Mr. Hendrix filed an affidavit denying that he was aware of or personally involved in Mr. Fernandez's transfer to MCF. Dkt. 40-2 at ¶¶ 5, 11, 12. The affidavit also says that an "IDOC Classification Analyst reviewed the information relating to Plaintiff's transfer request and approved his transfer to MCF." *Id.* at ¶ 13.

Mr. Fernandez has filed emails that IDOC officials sent concerning his safety at CIF and other facilities. On August 14, 2019, Investigator John Poer sent an email to several staff members in response to a message asking "when

they are transferring [Mr. Fernandez] out?" Dkt. 47 at 12. Investigator Poer responded:

> He is a Norteño and Mrs. Knight doesn't want him in our population. Hendrix and Kurt want him to "try it out" and see if he can be here. Problem is, we might not know he is in danger until he is assaulted and seriously injured. This is still in discussion.

*Id.*

On August 20, Investigator Poer emailed Warden Wendy Knight and asked her not to transfer Mr. Fernandez within CIF because certain 13s felt "obligated to attack him on sight." *Id.* at 9. Investigator Poer was concerned that at CIF, Mr. Fernandez would "be alone" and "in danger in every unit." *Id.* Warden Knight responded that she "just sent an email to Jack Hendrix and Janet O'Neal asking for a transfer." *Id.* Warden Knight's email to Mr. Hendrix states:

> We were willing to give this a try but am thinking we may need to move him elsewhere. If there are other facilities that allow movement without assault due to protection from others maybe we try those facilities??

*Id.* at 13. In response, Mr. Hendrix asked a different IDOC employee for thoughts about the credibility of inmates who said that Mr. Fernandez would be in danger at CIF. *Id.*

On August 29, Warden Knight emailed Mr. Hendrix asking about "moving" Mr. Fernandez "based on the threat we received on him." *Id.* at 8. Mr. Hendrix responded that "we're working out the move." *Id.* Ms. O'Neal approved Mr. Fernandez's transfer to MCF the next day. Dkt. 48 at 4.

Defendants have moved for summary judgment.  Dkt. 39.

4

## II.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

5

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### III.
### Discussion

Defendants argue that they are entitled to summary judgment because they were not personally involved with Mr. Fernandez's transfer to MCF and were not deliberately indifferent to his safety. Dkt. 41.

#### A.  Personal Involvement

"[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.*

##### 1. Officers Hall and Boner

Officers Hall and Boner acknowledge that they interviewed Mr. Fernandez and were responsible for relaying information about him to the Classification Division, but argue that they are entitled to summary judgment because they had no personal involvement in the decision to transfer Mr. Fernandez to MCF. Dkt. 41 at 5. Mr. Fernandez responds that IDOC policy gave Officers Hall and Boner authority over his transfer and a duty to inform Mr. Hendrix of their recommended placement. Dkt. 46 at 4.

6

As IA officers, Officers Hall and Boner interview prisoners about their "transfer preferences, safety concerns, and any other relevant information" and "present that information to the Classification Division for evaluation." Dkt 40-2 at 2; *see* dkt. 40-1 at 20:5-6. They "do not have any control over the transfer determinations of the Classification Division." Dkt. 40-2 at 2.[2]

Mr. Fernandez has not designated evidence from which a reasonable jury could find the contrary. Indeed, his own understanding was that IA officers are "the first ones to approve [the transfer] . . . and then . . . the ultimate decision was Hendrix." Dkt. 40-1 at 53:8–11. In that vein, either Officer Hall or Officer Boner told him during his interview that the information and decision would be "going downstate for classification." *Id.* at 24:17.

And Officers Hall and Boner were minimally involved after that interview. Mr. Fernandez has designated several IDOC emails about his placement decisions, but Mr. Boner did not send any of them, and the only one that Mr. Hall sent said that "The decision has been made to send Fernandez to population. . . . If it is possible try to send him to C-dorm." Dkt. 46 at 8. This email does not show personal involvement with the transfer to MCF because it was sent more than two weeks before that transfer and relates solely to intrafacility placement within CIF. *See id.* And when IDOC officials later discussed a transfer out of CIF, Officers Hall and Boner sent none of the emails,

---

[2] Nevertheless, Mr. Fernandez argues that IDOC policy 00-01-103 gave Officers Hall and Boner "control [and] authority over which specific prison that [he] should have been specifically transferred to for his safety." Dkt. 46 at 4. This cannot create a genuine issue of fact because Mr. Fernandez has not designated the policy or evidence of its contents, leaving Mr. Hendrix's contrary affidavit undisputed on this point.

7

were not asked for input, and were not identified as decisionmakers. *See* dkt. 47 at 8–9, 12–13. In fact, none of the designated emails say that MCF was a potential placement, much less that Officers Hall and Boner were involved in choosing it. *See id.* To the contrary, Officers Hall and Boner were merely copied on some emails or received them later as an "FYI." *Id.*

Mr. Fernandez therefore has not designated evidence allowing a reasonable jury to infer that that Officers Hall and Boner were personally involved in his transfer to MCF. Instead, their jobs were to interview Mr. Fernandez and provide what they learned to the Classification Division. There is no designated evidence that they directed, suggested, consented to, or had any control over Mr. Fernandez's transfer to MCF. *See Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (noting the personal responsibility requirement is satisfied if the conduct causing the constitutional deprivation occurs at the defendant's direction or with their knowledge or consent).

Because no reasonably jury could find that Officers Hall and Boner were personally involved in the decision to transfer Mr. Fernandez to MCF, they are entitled to summary judgment.[3]

### 2. Mr. Hendrix

Mr. Hendrix argues that he's entitled to summary judgment based on his affidavit that he "was not personally involved in the decision to transfer Plaintiff to MCF." Dkt. 40-2 at ¶ 12; *see* dkt. 41 at 6. But the designated evidence allows

---

[3] Because Officers Hall and Boner were not personally involved, the Court does not otherwise consider whether a reasonable jury could find that they were deliberately indifferent.

a reasonable jury to find otherwise. Indeed, the day before Mr. Fernandez's transfer to MCF was approved, *see* dkt. 48 at 4, Mr. Hendrix emailed CIF's warden that he and another official were "working out the move." Dkt. 47 at 8.

Nevertheless, Mr. Hendrix contends in reply that Mr. Fernandez's designated emails refer to Mr. Fernandez's safety and placement *within* CIF, rather than his transfer to MCF. Dkt. 50 at 3–4. A reasonable jury could infer, however, that Mr. Hendrix's work on "the move" referred to the transfer to MCF because the MCF transfer was approved the next day. *See* dkt. 47 at 8; dkt. 48 at 4. Indeed, in an earlier email, CIF's warden told Mr. Hendrix that they "may need to move [Mr. Fernandez] elsewhere" and asked about "other facilities." Dkt. 47 at 13. That prompted Mr. Hendrix to question Mr. Fernandez's "placement at CIF" to another official, with an offer to discuss the issue. *Id.*

A reasonable jury could therefore find that Mr. Hendrix was personally involved in the decision to transfer Mr. Fernandez to MCF.

### B. **Deliberate Indifference**

"It is well established that prison officials face a duty to protect prisoners from violence at the hands of other prisoners and that the failure to protect can violate the Eighth Amendment." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "A prisoner seeking to establish a violation of that Eighth Amendment right must show that the prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety." *Id.* "[T]he harm to which the prisoner was exposed must be an objectively serious one" and "the prison official must have actual, not merely

9

constructive, knowledge of the risk to be liable." *Id.* Whether an official had that knowledge is a question of fact that can be inferred "from circumstantial evidence" including "that the risk was obvious." *Id.*

Mr. Hendrix argues that he was not deliberately indifferent because he "did not know that moving [Mr. Fernandez] to MCF would pose a risk to [his] safety." Dkt. 41 at 7. The designated emails discussed above, however, involved "the threat we received on [Mr. Fernandez]," and referred to him as a "Norteño, dkt. 47 at 8, 13, which notes his gang affiliation, *see* dkt. 40 at 2. Indeed, Mr. Hendrix's affidavit says that he "knew that [Mr. Fernandez] generally had concerns about gang violence at CIF prior to the transfer." Dkt. 40-2 at 2. This evidence allows a reasonable jury to infer that Mr. Hendrix knew that Mr. Fernandez faced a serious risk of gang-related violence as he was "working out the move." Dkt. 47 at 8.

Because a reasonable jury could find that Mr. Hendrix had knowledge of that serious risk, it could also infer that Mr. Hendrix either reviewed Officers Hall and Boner's finding that Mr. Fernandez would be unsafe at MCF or should have done so. Mr. Hendrix knew that IA officers were responsible for investigating transfers, including interviewing "offenders regarding their transfer preferences, safety concerns, and any other relevant information." Dkt. 40-2 at 2. Officers Hall and Boner did that here and "provided the Classification Division with [Mr. Fernandez's] information and interview," so that information was available to Mr. Hendrix. Dkt. 41 at 3; *see* dkt. 40-2 at 2. And as the Executive Director of Classification who "personally assist[s] with some classification decisions," Mr.

10

Hendrix knew that the Classification Division was to "evaluat[e]" the information from IA officers and "make [transfer] decisions based on [that] information." Dkt. 40-2 at 2.

From this evidence of Mr. Hendrix's role in the transfer, a reasonable jury could infer that he ignored or failed to review critical information about a specific, credible risk to Mr. Fernandez's safety. *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) ("[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."). That can amount to deliberate indifference. *See, e.g.*, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Although Mr. Pyles was required to allege that Warden Gaetz acted with a sufficiently culpable state of mind, he could meet this burden by asserting that the warden knew about the hazardous condition and turned a blind eye to it.").

Summary judgment therefore is not appropriate on Mr. Fernandez's claim against Mr. Hendrix.

## IV.
## Conclusion

Defendants' motion for summary judgment is **granted** as to Officers Hall and Boner and **denied** as to Mr. Hendrix. Dkt. [39]. The **clerk is directed** to terminate Officers Hall and Boner as defendants on the docket.

The claims as to Mr. Hendrix will be resolved through jury trial or settlement. The **clerk is directed** to include a form motion for assistance recruiting counsel with Mr. Fernandez's copy of this order. If Mr. Fernandez

11

wishes for the Court to recruit an attorney to assist him through the remainder of the action, he must complete and return the form **no later than October 20, 2023**.

The Court requests that Magistrate Judge Baker hold a telephonic status conference after recruited counsel has appeared.

**SO ORDERED.**

Date: 9/29/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MARCO FERNANDEZ
229088
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel.